UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| **DUSTIN SMITH,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No.: |
| **GC SERVICES LIMITED PARTNERSHIP, CAPITAL MANAGEMENT SERVICES, LP, UNITED COLLECTION BUREAU, INC.,** | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## Complaint for Damages

A person should not have to fight off debt collectors for a debt they never incurred. But this is what Plaintiff Dustin Smith has been forced to do.

Plaintiff Dustin Smith ("Plaintiff") files his Complaint for Damages against the Defendant GC Services Limited Partnership, Capital Management Services, LP, and United Collection Bureau, Inc. for their willful, intentional, and/or negligent violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* (hereinafter "FDCPA"), under Georgia's Fair Business Practices Act, O.C.G.A. §§ 10-1-390 *et seq.* (hereinafter "FBPA.")

## Jurisdiction

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2. This Court has subject matter jurisdiction of claims arising under the FDCPA which invokes federal question jurisdiction pursuant to 28 U.S.C. § 1331.

3. This Court also has supplemental jurisdiction with regard to Plaintiff's pendent state law claims and under the doctrine of supplemental jurisdiction as set forth in 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

5. Venue is proper in this Court because the Defendants directed the offending communications giving rise to this action to the Plaintiff while he resided in the jurisdiction of this Court.

## Parties

6. Plaintiff is a natural person residing in Eastman, Georgia, which is located in Dodge County, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), and/or a person affected by a violation of the FDCPA with standing to bring this claim under 15 U.S.C. § 1692k(a).

7. Plaintiff is a "consumer" as that term is defined by O.G.C.A. § 10-1-392(a)(6).

8. Defendant GC Services Limited Partnership is a debt collection company operating within, and actively collecting consumer debts in, the State of Georgia, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

9. Summons and Complaint may be served on Defendant GC Services Limited Partnership by service on its registered agent for service of process in Georgia, CT Corporation System 289 S Culver St, Lawrenceville, GA, 30046-4805, USA, or wherever they may be found.

10. Defendant Capital Management Services, L.P. is a debt collection company operating within, and actively collecting consumer debts in, the State of Georgia, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

11. Summons and Complaint may be served on Capital Management Services, L.P. by service on its registered agent for service of process in Georgia, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092, USA, or wherever they may be found.

12. Defendant United Collection Bureau, Inc. is a debt collection company operating within, and actively collecting consumer debts in, the State of Georgia, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

13. Summons and Complaint may be served on Defendant United Collection Bureau, Inc. by service on its registered agent for service of process in

Georgia, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092, USA, or wherever they may be found.

14. Defendants directed communications to Plaintiff using means of interstate commerce while Plaintiff resided in Georgia and in this judicial district.

15. Defendants sole purpose is the collection of debts.

16. Defendants each regularly contact consumers and attempt to collect debts from consumers residing in this judicial district.

17. Defendants' principle purpose is the collection of debts.

## Statutory Scheme

## The Fair Debt Collection Practices Act

18. Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

19. Debt is a big business in America. In the first quarter of 2017, U.S. household debt exceeded 12.73 trillion dollars.[1] This number exceeds the gross

---

[1] *Household Debt Makes a Comeback in the U.S.*, New York Times (May 2017) accessed on Mar. 4, 2018 at https://www.nytimes.com/2017/05/17/business/dealbook/household-debt-united-states.html

domestic product of China.[2] Credit card debt accounted for six percent or 763.8 billion dollars' worth of household debt. By April of 2017, the Federal Reserve reported Americans had the highest credit card debt in history as the number soared past the one trillion-dollar mark.[3]

20. The frustration everyday Americans experience as the result of debt collection efforts was recently recognized by Justice Kavanaugh:

> Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints.
>
> For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones. But a 2015 amendment to the TCPA allows robocalls that are made to collect debts owed to or guaranteed by the Federal Government, including robocalls made to collect many student loan and mortgage debts.
>
> *Barr, et al. v. American Association of Political Consultants, Inc. et al.*, 591 U. S. ____ (2020)

---

[2] *In Debt We Trust for U.S. Consumers With $12.7 Trillion Burden*, Bloomberg (Aug. 2017) accessed on Mar. 3, 2017 at https://www.bloomberg.com/news/articles/2017-08-10/in-debt-we-trust-for-u-s-consumers-with-12-7-trillion-burden
[3] *Americans Now Have the Highest Credit-card Debt in U.S. History*, Marketwatch (Aug. 2017) accessed on Mar. 4, 2017 at https://www.marketwatch.com/story/us-households-will-soon-have-as-much-debt-as-they-had-in-2008-2017-04-03

## The Georgia Fair Business Practices Act

21. The Georgia legislature enacted the FBPA "to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state. It is the intent of the General Assembly that such practices be swiftly stopped, and this part shall be liberally construed and applied to promote its underlying purposes and policies."

22. The FDCPA and FBPA all provide for enforcement of their respective protections and civil liability through consumers acting as private attorneys general.

23. Georgia law has long recognized "unreasonable bill-collection procedures, e.g., making false statements, threats, and harassing telephone calls, do constitute an actionable tortious wrong." *Dolanson Co. v. Citizens & S. Nat'l Bank*, 242 Ga. 681, 685 (1978) *citing Blazer Financial Services of Ga. v. Stewart*, 141 Ga. App. 156 ( (1977).

## Facts Common to All Counts

24. Sometime in September of 2018 an unknown person or persons opened an account in Plaintiff's name with Citibank, N.A. for a SEARS branded card.

25. Plaintiff learned of this alleged account on or about February 12, 2019 when he was contacted by Citibank, N.A.

26. Plaintiff informed Citibank, N.A. the account was not his and, thus, he owed no debt to Citibank, N.A.

27. On information and belief, the SEARS branded Citibank, N.A. card was used to purchase approximately $2,000.00 worth of consumer goods.

28. After speaking with Citibank, N.A. Plaintiff called the Dodge County Sheriff's Department and made a report:

> On February 12, 2019, I Deputy Turner received a call from Dispatch in reference to contacting the complainant, Dustin Smith, wanting to speak to a deputy via phone. I made contact with Mr. Smith. Mr. Smith stated that he was notified by a Citi Bank about a credit card bill that maxed out to $2,000. Mr. Smith stated that he never made a credit card with the bank and has not spent $2,000. Mr. Smith stated that they sent him to the fraudulent department and the investigators would not gve him any information due to the transactions being investigated now.
>
> Mr. Smith stated that it appears that the card was opened back in September 2018. Mr. Smith stated that he filed a report with the Dodge County Sheriff's Office last year in reference to someone renting a rental car in his name. Mr. Smith stated that he filed a report with Deputy Justice then and now he believes that the same person has made a credit card in his name to use. Mr. Smith stated that the card maxed out at $2,000 and that is when he was notified by the company of the $2,000 balance that he needed to pay.

29. A redacted copy of the report made by the Dodge County Sheriff's Department is attached hereto as Exhibit "A."

30. Plaintiff, having done all the right things to dispute this fraudulent debt, believed the matter was resolved after reporting the crime and informing Citibank, N.A. of the fraud.

31. Citibank, N.A. declared the debt to be in default and began placing it with debt collection companies for collection.

32. One of those collectors was Defendant GC Services Limited Partnership.

33. On or about July 16, 2019, Defendant GC Services Limited Partnership began sending dunning letters for the Citibank, N.A. account to Plaintiff.

34. A true and accurate copy of the July 16, 2019 dunning letter is attached hereto as Exhibit "B."

35. On or about August 15, 2019, Defendant GC Services Limited Partnership sent a second dunning letter to Plaintiff.

36. A true and accurate copy of the August 15, 2019 dunning letter is attached hereto as Exhibit "C."

37. Concerned he was getting collection letters, Plaintiff sent a letter dated October 9, 2019 to Defendant GC Services Limited Partnership and attached a copy of the police report.

38. Plaintiff got no response from Defendant GC Services Limited Partnership.

39. Sometime after sending the October 9, 2019 letter to Defendant GC Services Limited Partnership, the debt was placed with Defendant Capital Management Services, LP.

40. On December 4, 2019, Defendant Capital Management Services, LP sent a dunning letter to Plaintiff attempting to collect the Citibank, N.A. account.

41. A true and accurate copy of the December 4, 2019 dunning letter is attached hereto as Exhibit "D."

42. At a boiling point, Plaintiff sought out help and retained counsel.

43. On April 9, 2020, Plaintiff demanded Defendant Capital Management Services, LP validate the debt.

44. Defendant Capital Management Services, LP responded on April 13, 2020 and stated the account "has been returned to Citibank, N.A."

45. On April 15, 2020 Plaintiff received another dunning letter for the Citibank, N.A. account, this time from Defendant United Collection Bureau, Inc.

46. A true and accurate copy of the April 15, 2020 dunning letter is attached hereto as Exhibit "E."

47. With Plaintiff's frustration at an apex, on May 4, 2020 an ante-litem notice was sent to all three Defendants placing them on notice of the series of events which had transpired.

48. A true and accurate copy of the May 4, 2020 ante-litem notice and confirmation of receipt for each copy is attached hereto as a composite exhibit labeled Exhibit "F."

49. The May 4, 2020 ante-litem notice also demanded Defendant United Collection Bureau, Inc. comply with the requirements of 15 U.S.C. § 1692g with regards to the disputed account.

50. Tellingly, Plaintiff received no response from any of the three Defendants. (Defendant GC Services Limited Partnership's letter was returned unclaimed.)

51. The Citibank, N.A. account each Defendant sought to collect from Plaintiff was not opened by Plaintiff.

52. Citibank, N.A. was informed of the same prior to any of the Defendants acquiring the account for collection.

53. Ignoring the information previously provided to Citibank, N.A. by the Plaintiff, each of these Defendants sought to collect the debt from Plaintiff knowing he did not owe the same.

54. Rather than honoring Plaintiff's dispute dated October 9, 2019, Defendants worked in tandem to ensure Plaintiff would be subjected to unlawful collection activity.

55. Plaintiff has lost time dealing with these multiplicitous collection efforts from the Defendants for a debt he does not owe.

56. Plaintiff incurred postage expenses he would not have otherwise incurred but for these Defendants' unlawful attempts to collect the Citibank, N.A. account.

57. Plaintiff has experience emotional damages in the form of stress and frustration as a result of the Defendants collection efforts.

58. Plaintiff has been incurring attorneys' fees and expenses he would not have otherwise incurred but for these Defendants' unlawful collection efforts.

59. Simply stated, Plaintiff would have experienced none of these damages or incurred any of these expenses had any of these Defendants paid <u>any</u> attention to his disputes.

## Causes of Action

## Count I – Violations of the Fair Debt Collection Practices Act

## 15 U.S.C. §§ 1692 et seq.

60. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

61. The debt identified in the dunning letters dated July 16, 2019, August 15, 2019, December 4, 2019, and April 15, 2020 is a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

62. Defendants are each a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

63. The July 16, 2019, August 15, 2019, December 4, 2019, and April 15, 2020 dunning letters are each a "communication" as that term is defined by 15 U.S.C. § 1692a(2).

64. Defendants violated 15 U.S.C. § 1692e by seeking to collect amounts Defendants were not authorized to collect in violation of § 1692e(2)(A).

65. Defendants violated 15 U.S.C. § 1692f by seeking to collect amounts Defendants were not authorized to collect in violation of § 1692f(1).

66. Defendants violated 15 U.S.C. § 1692f by each continuing to attempt to collect the debt from Plaintiff despite his efforts to dispute the debt including his October 9, 2019 dispute letter, all of which resulted in the Defendants utilizing unfair or unconscionable tactics to collect a debt from Plaintiff which was demonstrably not the obligation of the Plaintiff.

67. As result of each Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from each Defendant.

## **Count II – Georgia Fair Business Practices Act**
## **O.C.G.A. §§ 10-1-390** *et seq.*

68. Plaintiff is a "consumer" as that term is defined by O.C.G.A. § 10-1-393(a)(6).

69. The collection of debt related to consumer transactions is considered a "consumer transaction," as that term is defined by O.C.G.A. § 10-1-393(a)(10). *1st Nationwide Collection Agency, Inc. v. Werner*, 288 Ga. App. 457, 459 (2007).

70. Plaintiff's counsel mailed an ante litem notice to Defendants by certified mail in compliance with O.C.G.A. § 10-1-393(a) on May 4, 2020.

71. Defendants intentionally violated the FBPA by violating the FDCPA as alleged herein.

72. Defendants' violation of the FPBA was done intentionally and willfully, was not the result of error, and was not in conformity with any law, regulation, consent order, or other promulgation of rules.

73. Plaintiff is entitled to the trebling of any actual and statutory damages he sustained as a result of the Defendants' intentional and/or willful violations of the FBPA pursuant to O.C.G.A. § 10-1-399(c) and, reasonable attorney's fees and costs pursuant to O.C.G.A. § 10-1-399(d) from each Defendant.

## Count III – Punitive Damages under the FBPA

74. On information and belief, Plaintiff alleges Defendants and their agents acted willfully and with malice, wantonness, oppression, or with that entire want of care which would raise the presumption of conscious indifference to the consequences of its actions, entitling Plaintiff to an award of punitive damages in an amount to be determined by the enlightened conscience of a jury.

75. Plaintiff has a statutorily created right to "exemplary damages," sometimes also called punitive damages, pursuant to O.C.G.A. § 10-1-399(a) for intentional violations of FBPA, O.C.G.A. § 10-1-390 et seq.

76. Plaintiff alleges Defendants' continued actions are intentional in nature and requests that this Court award Plaintiff exemplary damages, also known as

punitive damages, in an amount to be determined by the enlightened conscious of a jury.

## Demand for a Jury Trial

77. Trial by jury is hereby demanded.

**WHEREFORE**, Plaintiff prays that this Court:

a) Find that Defendants' behavior violates the FDCPA;

b) Find that Defendants intentionally violated the FBPA;

c) Enter judgment in favor of Plaintiff and against Defendants for statutory damages, actual damages, costs, and reasonable attorney's fees as provided by § 1692k(a) of the FDCPA;

d) Enter judgment in favor of Plaintiff and against Defendants for general damages, costs, and reasonable attorneys' fees as provided by §§ 10-1-399(a) and (d) of the FBPA;

e) Enter judgment in favor of Plaintiff and against Defendants for treble damages as provided by § 10-1-399(c).

f) Enter judgment in favor of Plaintiff and against Defendants for punitive damages as provided by § 10-1-853 of the UDPTEA;

g) Find Defendants jointly and severally liable for punitive damages in an amount to be determined by the enlightened conscious of a jury pursuant

to Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-399(a) and O.C.G.A. § 51-12-5.1;

h) Enter judgment in favor of Plaintiff and against Defendants for interest in accordance with § 51-12-14(a) of the Unliquidated Damages Interest Act;

i) Enter judgment in favor of Plaintiff in an amount to offset any tax liability incurred by Plaintiff as a result of acting as a private attorney general and enforcing the FDCPA; and,

j) Grant such other and further relief as the Court may deem just, necessary or appropriate.

Submitted July 15, 2020.

**DANIELS LAW LLC**

/s/Ronald Edward Daniels
RONALD EDWARD DANIELS
Georgia Bar No.: 540854
Counsel for Plaintiff

P.O. BOX 4939
Eastman, GA 31023
478.227.7331 (t)
478.352.0173 (f)
ron@dlawllc.com
rondanielslaw.com

/s/ Clifford Carlson
Clifford Carlson
Georgia Bar No. 227503

Cliff Carlson Law, P.C.
1114-C1 Highway 96 #347
Kathleen, Georgia 31047
Tel. 478-254-1018
cc@cliffcarlsonlaw.com